**RADISSON HOTEL CORPORATION,
Plaintiff,**

v.

**PONTCHARTRAIN HOTEL GROUP,
L.L.C., Defendant.**

**No. CIV.A. 97–40077.**

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 3, 1997.

Gerlad A. Pawlak, Collins, Einhorn, South-field, MI, Karl M. Terrell, Stokes & Murphy, Atlanta, GA, for Plaintiff.

Leonard B. Shulman, Keywell & Rosenfeld, Troy, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On April 3, 1997, Radisson Hotel Corporation ("Radisson") filed this breach of contract action against Pontchartrain Hotel Group, L.L.C. ("PHG"). Shortly thereafter, on May 7, 1997, defendant filed a motion for summary judgment.[1] For the following

In the August 7, 1997 opinion and order, this court, having resolved the motion to consolidate, ordered that briefing on PHG's motion for summary judgment resume. This court gave Radisson 10 days from the date of the order to respond reasons, defendant's motion will be granted.

### FACTS

As of February 1, 1994, the Resolution Trust Corporation ("RTC") was the owner of the Pontchartrain Hotel, located in downtown Detroit (the "Hotel"). The RTC had acquired ownership of the Hotel in the early 1990's, in connection with its receivership of a failed savings and loan institution. Also, as of February 1994, pursuant to a "Hotel Management Agreement" entered into between the RTC's predecessor in interest, St. Charles Avenue, Inc., plaintiff Radisson Ho-

---

**1.** PHG's motion for summary judgment was initially set for hearing on June 25, 1997. However, on May 27, 1997, before Radisson responded to PHG's motion for summary judgment, this court entered an order adjourning the hearing on that motion until this court ruled on another motion, to wit: Radisson's motion to consolidate the instant case, *Radisson v. Pontchartrain Hotel Group*, 97–40077 with the companion case of *Radisson Hotel Corp. v. Federal Deposit Insurance Corp.*, 97–40300.

In an opinion and order dated August 7, 1997 (attached), this court granted in part and denied in part Radisson's motion to consolidate. Specifically, this court consolidated the *Radisson v.*

*Pontchartrain Hotel Group* case with the *Radisson v. Federal Deposit Insurance Corp.* case for administrative purposes but not for trial.

In the August 7, 1997 opinion and order, this court, having resolved the motion to consolidate, ordered that briefing on PHG's motion for summary judgment resume. This court gave Radisson 10 days from the date of the order to respond to PHG's previously filed motion for summary judgment.

PHG's motion for summary judgment was then re-noticed for a hearing to be conducted on Thursday, October 2, 1997. As October 2, 1997 was a holiday, the hearing was then again rescheduled to Wednesday, October 1, 1997.

tel Corporation ("Radisson") managed all of the Hotel's operations.

Pursuant to a "Contract of Purchase and Sale" ("Purchase Agreement") dated February 23, 1994, defendant Pontchartrain Hotel Group, L.L.C. ("PHG") purchased the Hotel from the RTC. Closing took place on May 24, 1994. Up and through that date, Radisson continued to manage the Hotel pursuant to the terms of the Hotel Management Agreement. As of closing, however, the Hotel Management Agreement was terminated and Radisson discontinued its management activities at the Hotel.

The Purchase Agreement entered into between PHG and RTC incorporated a "Special Provisions Addendum" which at Section 2(c) provides:

> Ownership of the Hotel will be transferred from Seller [RTC, FDIC's statutory predecessor] to Buyer [Pontchartrain] at the Closing [May 24, 1994]. All union employees of the Hotel will cease to be employees of the Seller [RTC] as of Closing. Prior to Closing, Buyer [PHG] agrees to offer employment to all such employees commencing as of the Closing.
>
> Buyer [PHG] agrees to discharge all *obligations* with respect to such employees, including, without limitation, all obligations for wages, federal, state and local withholding taxes (including FICA), vacation and sick pay, MESC contributions and health, welfare *and pension fund obligations which accrue on, from and after the Closing.* Seller [RTC] agrees to discharge all obligations with respect to all Hotel employees, including, without limitation, all obligations for wages, federal, state and local withholding taxes (including FICA), vacation and sick pay, MESC contributions and health, welfare and pension fund obligations which accrue prior to the Closing.

On June 16, 1995, after closing, Radisson was served with a notice from the Board of Trustees of the Hotel Employees and Restaurant Employees International Union Welfare and Pension Fund ("Trustees") informing Radisson of its "withdrawal liability" under the Employee Retirement Income Security Act of 1994 ("ERISA"). The notice asserted that, as of the date of Radisson's withdrawal from a multi-employer pension plan (i.e., the date of closing under the Purchase Agreement), the Plan was underfunded in the amount of $94,469.16.[2]

Although Radisson disputed its liability, it began making monthly payments to the Trustees pursuant to ERISA's "pay now, dispute later" provisions. On December 19, 1996, Radisson filed a lawsuit against the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as successor to the RTC, alleging that, pursuant to the terms of the Hotel Management Agreement, the FDIC is required to indemnify Radisson for withdrawal liability.[3]

---

**2.** The notice read, in relevant part, as follows:

Based on the records of the International Pension Plan, the Board of Trustees ["Trustees"] has determined that Colony Hotels and Resorts, Inc., D/B/A: Radisson Pontchartrain Hotel has incurred a complete withdrawal from [a multiemployer pension] Plan on May 24, 1994.

WITHDRAWAL LIABILITY

When a complete withdrawal from a Multiemployer Plan occurs, ERISA requires that the Board of Trustees assess withdrawal liability. This letter supplies a notice of the employer's liability resulting from a withdrawal from the Plan.

The amount of withdrawal liability allocable to Colony Hotels and Resorts, Inc.
D/B/A: Radisson Pontchartrain Hotel is $93,469.16.
This amount is payable in 43 monthly installments of $2,400.80 and a final payment of $2,115.58.

The first installment is due by August 15, 1995.

**3.** Radisson's claim is premised upon Sections 3(a), 5.1, 5,2, 10.1 and 13.4 of the Hotel Management Agreement. Section 5.1 of the Management Agreement provides in part that "[e]verything done by [the] Operator [Colony] in the performance of its obligations and all expenses incurred under this Agreement shall be for and on behalf of the Owner [St. Charles] and for its account." Section 10.1 of the Management Agreement states that "if [the] Operator [Colony] shall have advanced any funds in payment of a permitted expense in the maintenance and operation of the Hotel, Owner [St. Charles] shall reimburse Operator [Colony] therefore on demand." (emphasis added). Sections 3(a) and 5.2 of the Management Agreement provide that the "Owner" of the Hotel is to pay all debts and liabilities arising in the course of business.

Radisson then filed the instant action on April 3, 1997, alleging that it is a third-party beneficiary of the Purchase Agreement and, pursuant to Paragraph 2(c) of the Special Provisions Addendum to that Agreement, PHG is liable for withdrawal liability.

On May 7, 1997, PHG filed this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). PHG argues that Radisson's claim against it is, as a matter of law, without merit and should be summarily dismissed. First, PHG contends that Radisson has no standing to assert a claim against PHG for enforcement of PHG's alleged obligations under the Purchase Agreement because Radisson is not an intended third-party beneficiary of that Agreement. Second, PHG argues that, assuming arguendo that Radisson *is* an intended third-party beneficiary of the Purchase Agreement, its claim still fails because the RTC, rather than PHG, is obligated to pay for withdrawal liability pursuant to Paragraph 2(c) of the Special Provisions Addendum to the Purchase Agreement.

## *ANALYSIS*

### *Summary Judgment*

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute be-

tween the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1158 (6th Cir.1980).

If the movant meets the standard specified at Rule 56(c), then the opposing party must come forth with "specific facts showing that there is a genuine issue for trial." *First National Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 1583, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(e). The non-moving party "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.1993), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). And, "if the adverse party does not respond, summary judgment, if appropriate shall be entered against the adverse party." Fed.R.Civ.P. 56(e); *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton*, 24 F.3d 823, 826–27 (6th Cir. 1994).

### *Radisson Is Not an Intended Third–Party Beneficiary*

PHG's first argument in support of its motion for summary judgment is that Radisson is not an intended third-party beneficiary of the Purchase Agreement entered into between PHG and RTC and, as such, cannot assert a claim against PHG for enforcement of that contract.

Third-party beneficiary status is statutorily determined by Section 600.1405 of the Michigan Compiled Laws (West 1996), which provides:

Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said

promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

Mich. Comp. Laws § 600.1405 (West 1996) (emphasis added). Construing the aforementioned provision, the court in *Dynamic Construction Co. v. Barton Malow Co.*, 214 Mich. App. 425, 543 N.W.2d 31 (1995) stated:

> Third-party beneficiary status requires an *express promise* to act to the benefit of the third-party; where no such promise exists, that third party cannot maintain an action for breach of contract. Thus, a person who incidentally benefits from the performance of some duty required under a contract has no rights under the contract.

*Id.* at 428, 543 N.W.2d 31. Furthermore, as observed by the court in *Greenlees v. Owen Ames Kimball Co.*, 340 Mich. 670, 676, 66 N.W.2d 227 (1954):

> A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefits does not give him the right-to sue for its breach.

In this instance, PHG contends that Radisson is not an ***intended*** third-party beneficiary of the Purchase Agreement, but rather an ***incidental*** beneficiary. PHG maintains that at the time it entered the Purchase Agreement with RTC, both parties contemplated that they, alone, would be responsible for pension funding, with RTC satisfying obligations accruing prior to closing, and PHG satisfying obligations accruing on or after closing. Therefore, so PHG contends, neither RTC and PHG could have intended to benefit Radisson.

PHG compares the case *sub judice* to *Paul v. Bogle*, 193 Mich.App. 479, 484 N.W.2d 728 (1992), in which the court found that the plaintiff was ***not*** an intended third-party ben-

eficiary. In *Paul,* plaintiff Ronald Paul was injured when his vehicle was struck by a truck owned by defendant George Bogle. The truck had been leased by Bogle to defendant Wolverine Expediting Inc. Defendant Gregory Freed was operating the truck at the time of the accident. Paul sued Bogle, Wolverine and Freed for damages.

Bogle and Wolverine were parties to a contract pursuant to which Wolverine agreed to indemnify Bogle for all "claims of damages" arising out of the operation of the truck. Freed asserted that he was a third-party beneficiary of that contract of indemnification and, accordingly, was entitled to indemnification by Wolverine. The Michigan Court of Appeals rejected Freed's argument, stating:

> To be an intended third-party beneficiary, the promisor must have undertaken to do something to or for the benefit of the party asserting such status. An objective test is used to determine the claiming party's status, and focuses upon the contract itself. *Where the contract is intended to primarily benefit its signatories. the mere fact that a third person would be incidentally benefited does not entitle that person to its protection.*

*Id.* at 491–91, 484 N.W.2d 728. (emphasis added)

PHG argues that *Paul* is similar to the case at hand because like the indemnification provision in *Paul* which was intended only to benefit the signatories to the indemnification contract, those being Wolverine and Bogle, Paragraph 2(c) of the Special Provisions Addendum to the Purchase Agreement was intended only to benefit the signatories to the Purchase Agreement, those being PHG and RTC.

This court is persuaded by defendant's argument. From an objective review of Section 2(c) of the Special Provisions Addendum, as well as the Purchase Agreement as a whole, it seems that the purpose of Section 2(c) was to apportion liability between RTC and PHG for employee obligations which arose prior to, on the date of, and after closing. In that sense, it was only intended to benefit its signatories, by providing them some bright-line date as to when RTC's lia-

bility for employee obligations would end and when PHG's would begin. It was not intended to benefit third-parties who incurred Hotel employee obligations prior to, on the date of, and after closing, by providing them reimbursement for monies paid toward such obligations. In that sense, then, it was not intended to benefit Radisson or some entity occupying the position presently occupied by Radisson. Any benefit third-parties would receive from Section 2(c) is purely incidental.

Radisson argues that it *is* a third-party beneficiary of the Purchase Agreement. It's argument in support of its position is as follows. First, Radisson contends that PHG made a binding promise to pay withdrawal liability pursuant to Section 2(c) of the Special Provisions Addendum to the Purchase Agreement, which provides in part, "Buyer [PHG] agrees to discharge *all* obligations with respect to [Hotel] employees, including ... pension fund obligations which accrue on, from and after the closing."[4] Second, Radisson argues that at the time the Purchase Agreement was executed, PHG knew that Radisson was RTC's agent and that RTC was responsible for indemnifying Radisson for all expenses incurred in operation and management of the Hotel, including withdrawal liability.[5] Therefore, so Radisson asserts, PHG must have promised to directly benefit Radisson when it promised to pay withdrawal liability. This argument is meritless. Radisson's argument is much too attenuated to hold PHG liable under a third-party beneficiary theory. Moreover, the cases Radisson relies upon are distinguishable.[6]

For instance, Radisson relies on the case of *Guardian Depositors Corporation of Detroit v. Brown*, 290 Mich. 433, 287 N.W. 798 (1939), this case does not support Radisson's

position. In *Guardian*, Simeon G. Trevethan and his wife executed a first mortgage and subsequently conveyed the mortgaged property to defendants Roy E. Brown and Lillian K. Brown (the "Browns"). The Browns assumed the Trevethan's mortgage pursuant to a clause in the warranty deed which provided that it was "subject to a mortgage in the sum of $2,640 being principal and interest due to date on said mortgage, which second parties (the Browns) assume and agree to pay."

Pursuant to the contract of assumption, the Browns made some payments on the mortgage, but missed others. Ultimately, the mortgage was foreclosed, leaving a deficiency after the foreclosure sale. Plaintiff, Guardian Depositors Corporation of Detroit ("Guardian"), who had subsequently became the owner of the mortgage by a series of mesne assignments, sued the Browns for the deficiency pursuant to the assumption contract. The Browns argued, *inter alia*, that Guardian could not sue to enforce the Browns' obligation under the assumption contract because Guardian was not a party to that agreement and was therefore not specifically named therein. The court rejected that argument, stating:

> The language of the assumption clause above-quoted leaves no doubt that the defendants' promise to pay off the mortgage must be taken to mean that they will pay to the party holding the mortgage.

*Id.* at 800. Thus, the court construed the contract as intended to benefit the "party holding the mortgage," and because Guardian was that party is was deemed to be an intended third-party beneficiary.[7]

*Guardian* is not on point at all. *Guardian* dealt with an express assumption clause in a mortgage, which is not at issue in this case. This case involves an "allocation of liabilities"

---

**4.** PHG disputes this in the second part of its motion for summary judgment. PHG asserts that it did not make a binding promise to pay withdrawal liability and that withdrawal liability is the responsibility of RTC.

**5.** Radisson contends that through due diligence, PHG must have discovered that Radisson was RTC's agent and that RTC was "financially on the hook" to indemnify Radisson per the Management Agreement for expenses arising in the operation and management of the hotel.

**6.** At oral argument, Radisson seemed to be arguing that a promise to a principal is intended to also benefit the agent. Radisson cites no authority for such a proposition.

**7.** The court also noted that, in addition to his legal claim as a third-party beneficiary, Guardian was entitled to bring a claim in equity for foreclosure of the mortgage.

provision in a Purchase Agreement.[8] The assumption clause in *Guardian* contained an explicit and direct promise to benefit "the person holding the mortgage." No such explicit and direct promise to benefit Radisson exists in this case.[9]

Radisson also relies on *Spiklevitz v. Markmil Corp.*, 136 Mich.App. 587, 357 N.W.2d 721 (1984), arguing that that case is "directly on point" and supportive of its position that it is a third-party beneficiary. Yet, *Spiklevitz* is highly distinguishable and in this court's opinion, provides no support for Radisson's position.

In *Spiklevitz*, defendants assumed certain debts and other obligations in connection with their purchase of a business, including the obligation to pay a promissory note held by the plaintiff. Plaintiff, as the party holding the note and the party to whom payment would be made, asserted that he was entitled to enforce defendants' promise to pay the note as a third-party creditor beneficiary of defendants' promise to pay. The court agreed with plaintiff, finding the plaintiff a third-party creditor beneficiary of the defendants' promise to pay.[10]

*Spiklevitz* stands for the proposition that, to the extent that Pontchartrain promised to pay withdrawal liability, the pension funds were creditor third-party beneficiaries of that promise. It is the pension funds which occupy the position occupied by the plaintiff in *Spiklevitz*, not Radisson.

In short, this court finds that Radisson is **not** a third-party beneficiary and is thus not entitled to seek enforcement of the promises allegedly made by PHG within the context of the Purchase Agreement.

### ORDER

IT IS HEREBY ORDERED that PONTCHARTRAIN HOTEL GROUP,

L.L.C.'s motion for summary judgment is GRANTED and this case is dismissed.

**SO ORDERED.**

8. Radisson also argues that "where the obligation to pay is fixed, the identity of the party seeking enforcement is immaterial so long as that party is legitimately entitled to the benefit of payment." Radisson's argument, while correct, begs the real question, namely, whether Radisson is legitimately entitled to payment under the Purchase Agreement as a third-party beneficiary.

9. Radisson also relies on other cases which add nothing to the relevant analysis under the statute,

including tort cases and a case involving a performance bond.

10. As the first argument asserted in PHG's motion for summary judgment is dispositive of this case, this court does not reach the second argument advanced by PHG in support of its motion for summary judgment, to wit: whether withdrawal liability is an "obligation" which "accrued on, from or after" the date of closing, such that it is PHG's responsibility.